UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RAKESH BANSAL, et al., | Case No. 23-cv-05527-LB |
| Plaintiffs, | |
| v. | **ORDER GRANTING SUMMARY JUDGMENT** |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | Re: ECF No. 53 |
| Defendant. | |

### INTRODUCTION

In this insurance-coverage action, the parties dispute whether defendant Nationwide Mutual Insurance Company paid full insurance benefits to the plaintiffs, Rakesh and Hema Bansal, after a water accident damaged their home. Nationwide ultimately paid the cost of repairs after a contractually required appraisal. It did not pay other costs: moving costs, living expenses for food and housing, and fair rental value. It moved for summary judgment on the grounds that it paid covered losses, which did not include the other expenses, there is no bad-faith claim because it paid and never unreasonably withheld benefits, and punitive damages thus are not warranted. Summary judgment is granted on all grounds.

# STATEMENT

The next sections summarize (1) the policy, (2) the loss and investigation, and (3) relevant procedural history.

## 1. The Policy

The policy for the plaintiff's house has the following loss provisions.

> **A. Coverage A — Dwelling**
>
> 1. We cover:
>     a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
>     b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."
>
> . . . .
>
> **D. Coverage D — Loss of Use**
>
> . . . .
>
> **1. Additional Living Expense**
>
> If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.
>
> Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere. Payment will not exceed the actual loss sustained or 24 months from the date of loss, whichever occurs first.
>
> **2. Fair Rental Value**
>
> If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.
>
> Payment will be for the shortest time required to repair or replace such premises. Payment will not exceed the actual loss sustained or 24 months from the date of loss, whichever occurs first.
>
> . . . .
>
> **C. Duties After Loss**
>
> In case of a loss to covered property, we have no duty to provide coverage under this policy if you or an "insured" seeking coverage fails to comply with the following duties:

. . . .

5. Cooperate with us in the investigation of a claim;

. . . .

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

. . . .

g. Receipts for additional living expenses incurred and records that support the fair rental value loss;

. . . .

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. . . . The appraisers will separately set the amount of loss. . . . A decision agreed to by any two will set the amount of loss.

. . . .

The appraisers and umpires are only authorized to determine the "actual cash value," replacement cost, or cost to repair the property that is the subject of the claim.[1]

. . . .

"Actual Cash Value" means the amount it would cost the "insured" to repair or replace covered property in its condition at the time of the loss, such expense being computed as of the time of the loss and quantified as follows. The measure of this "actual cash value" recovery, in whole or partial settlement of the claim, for either a total or partial loss to the structure or its contents, shall be the amount it would cost the "insured" to repair, rebuild, or replace the thing lost or damaged less a fair and reasonable deduction for physical depreciation based on its condition at the time of the loss or the policy limit, whichever is less. A deduction for physical depreciation shall apply only to components of a structure that are normally subject to repair and replacement during useful life of that structure.[2]

**2. The Loss and Investigation**

On July 19, 2021, Mr. Bansal reported water damage in his home from a July 17 leak in a refrigerator line. Nationwide's adjuster Robert Mulcahey, based in Iowa and not a California-

---

[1] Policy, Ex. A to Lathrum Decl. – ECF No. 53-3 at 20 (Bates NMIC_000014), 23 (Bates NMIC_000017), 36–39 (Bates NMIC_000030–33) (cleaned up). Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 56 (Bates NMIC_000050).

ORDER – No. 23-cv-05527-LB            3

licensed contractor, hired Alacrity, a third-party vendor, to inspect the damage.[3] Alacrity charged $300.06. Alacrity vets its adjusters for experience, certifications, and licenses but does not provide training. It did not know its adjuster's training or qualifications.[4] On July 28, 2021, Nationwide sent its initial repairs estimate ($11,845.44 for replacement costs and $11,068.13 for actual cash value), paid Mr. Bansal $8,568.13 (the amount after the policy deductible and depreciation), and explained how to request additional payment for other necessary repair work.[5]

In August, the plaintiffs retained a public adjuster, Jahn Miller, in exchange for ten percent of any Nationwide payment. Mr. Miller and Mr. Mulcahey communicated about the scope of work and covered living expenses, including Mr. Mulcahey's ability to pay hotel expenses directly or via reimbursement. Mr. Miller's contractor, Tom Koester, inspected the property and took measurements but did not perform destructive testing. He identified additional damage and suggested that Nationwide should reinspect the property. Mr. Mulcahey scheduled a reinspection with Alacrity for October 26, 2021, so that Mr. Bansal could be present. On September 20, 2021, Mr. Koester sent Mr. Miller a preliminary replacement estimate of $140,905.69 that included replacement of the wood floor because of its age and thinness, though he did not measure the thickness or know how often it had been refinished.[6] Mr. Miller sent the estimate to Nationwide on October 21, 2021, before the October 26 inspection.[7]

---

[3] Lathrum Decl. – ECF No. 53-2 at 3 (¶¶ 7–8); Claim Notes, Ex. B to id. – ECF No. 53-3 at 84–85 (Bates NMIC_003687–88); Mulcahey Dep., Ex. B to Roldan Decl. – ECF No. 56-1 at 35–37 (pp. 6:19–25, 12:12–13:20).

[4] Moran Dep., Ex. C to Roldan Decl. – ECF No. 56-1 at 54–57 (pp. 20:1–22:20, 37:1–38:22).

[5] Lathrum Decl. – ECF No. 53-2 at 3 (¶¶ 11–12); Nationwide Estimate, Ex. C to id. – ECF No. 53-3 at 110 (Bates NMIC_000834); Email, Ex. E to id. – ECF No. 53-3 at 156 (Bates NMIC_000382).

[6] Koester Dep., Ex. D to Roldan Decl. – ECF No. 56-1 at 60–62 (pp. 65:18–66:11) & Estimate, Ex. 5 to id. – ECF No. 56-1 at 94 (p. 28); Koester Dep., Ex. C to Chipman Decl. – ECF No. 53-1 at 133 (p. 50:18–20), 134 (p. 57:11–17), 138 (p. 61:18–22), 139 (p. 63:2–21), 140–41 (pp. 64:18–65:9); Email, Ex. 4 to Chipman Decl. – ECF No. 53-1 at 153; Claim Notes, Ex. B to Lathrum Decl. – ECF No. 53-3 at 87 (Bates NMIC_003286); Letter, Ex. F to Lathrum Decl. – ECF No. 53-3 at 159–61 (Bates NMIC_000764–66); Emails, Ex. G to Lathrum Decl. – ECF No. 53-3 at 163–64 (Bates NMIC_001187–88); Email, Ex. I to Lathrum Decl. – ECF No. 53-3 at 169 (Bates NMIC_001148); Email, Ex. J to Lathrum Decl. – ECF No. 53-3 at 171 (Bates NMIC_000367).

[7] Email, Ex. K to Lathrum Decl. – ECF No. 53-3 at 173 (Bates NMIC_001172).

On October 25, 2021, Nationwide reassigned the claim to large-loss adjuster Joe Austin, who called Mr. Miller to explain the process for evaluating supplemental-payment requests and confirmed the October 26 inspection. Mr. Austin attended the inspection with a licensed independent general contractor, Justus Manderbach of American Technologies. Mr. Bansal, Mr. Miller, and Mr. Koester also attended. During the inspection, Mr. Austin said that Nationwide would hire third-party vendor Renovar to evaluate whether the kitchen cabinets could be repaired. The attendees discussed the plaintiffs' living expenses that would be incurred during the repairs.[8] That day, Mr. Austin sent letters to Mr. Miller and Mr. Bansal, referencing the policy's coverage of living expenses during the repair period and flagging the need to document expenses.[9]

Mr. Austin retained Renovar on October 28, 2021, followed up with it in November, and informed Mr. Bansal and Mr. Miller on November 19, 2021, that Renovar's inspection would be on November 30, 2021. During the call, Mr. Miller said that he would send documentation of food costs.[10] At this point, the Bansals were living in Mrs. Bansal's second home in Oxnard, where they moved after the water incident.[11] On December 8, 2021, Mr. Miller provided Mr. Austin with the plaintiff's food costs from October 14, 2021, to November 19, 2021 ($1,273.46 less twenty percent for a claimed amount of $1,018.68), due to the unusable kitchen. Mr. Austin responded that he needed normal food costs because the policy reimbursed only a reasonable increase in food costs and said that he would send a revised repair estimate after he received Renovar's report.[12]

---

[8] Lathrum Decl. – ECF No. 53-2 at 4 (¶¶ 20–21, 24); Letter, Ex. M to id. – ECF 53-3 at 230 (Bates NMIC_001482); Claim Notes, Ex. B to id. – ECF No. 53-3 at 88–92 (Bates NMIC_003270, NMIC_003274–76, NMIC_003279).

[9] Letter, Ex. N to id. – ECF No. 53-3 at 236–42 (Bates NMIC_000389–95).

[10] Lathrum Decl. – ECF No. 53-2 at 5 (¶¶ 28–31); Claim Notes, Ex. B to id. – ECF No. 53-3 at 92 (Bates NMIC_003270); Email, Ex. O to id. – ECF No. 53-3 at 244 (Bates NMIC_001620).

[11] R. Bansal Dep., Ex. A to Chipman Decl. – ECF No. 53-1 at 12–13 (pp. 27:18–28:4); H. Bansal Dep., Ex. B to id. – ECF No. 53-1 at 115 (p. 19:5–11); Austin Dep., Ex. D to id. – ECF No. 53-1 at 279–80 (pp. 137:14–138:14).

[12] Email, Ex. T to Lathrum Decl. – ECF No. 53-3 at 259 (Bates NMIC_001145); Email, Ex. U to id. – ECF No. 53-3 at 266 (Bates NMIC_001442).

1    In December 2021, Renovar determined that the cabinets were not reparable.[13] On December
2    24, 2021, Mr. Miller communicated the plaintiffs' formula for food expenses based on additional
3    costs to eat out. On January 11, 2022, Mr. Miller communicated additional food costs from
4    November 17, 2021, to December 31, 2021 ($3,930.52 less twenty percent for a claimed amount
5    of $3,414.42). Food expenses thus totaled $4,163.10.[14]

6    In January 2022, Nationwide revised its repair estimate to $69,261.61, and Mr. Manderbach
7    (the general contractor from American Technologies who attended the October inspection) said
8    that he could begin repairs immediately for that estimate. Mr. Austin communicated this to Mr.
9    Miller that day.[15] Nationwide paid the plaintiffs $52,012.31 on January 14, 2022.[16] That day, Mr.
10   Miller emailed Mr. Austin, contesting American Technologies' ability to complete repairs for the
11   revised estimate and advising that the plaintiffs would submit a competing estimate.[17] Mr. Austin
12   responded that Nationwide would evaluate any counterproposal, said that the plaintiffs could (but
13   were not required to) hire American Technologies, and asked for bids and contact information for
14   any contractors retained by the plaintiffs.[18]

15   On January 24, 2022, Mr. Miller advised Mr. Austin that the plaintiffs' estimate had
16   $85,836.78 in additional repairs not in American Technologies' estimate.[19] On February 2, 2022,
17   Mr. Austin responded that any remaining disagreement about coverage needed to be resolved
18   through the policy's appraisal provision.[20] On March 7, 2022, the plaintiffs demanded appraisal.[21]

---

[13] Rep., Ex. W to Lathrum Decl. – ECF No. 53-3 at 271–90 (Bates NMIC_001489–508 (dated December 1, 2021)). Mr. Austin did not receive it until December 17 because it was sent to the wrong email address. Claim Notes, Ex. B to id. – ECF No. 53-3 at 95–96 (Bates NMIC_003267–68).

[14] Email, Ex. Z to Lathrum Decl. – ECF No. 53-3 at 318 (Bates NMIC_001194); Email, Ex. BB to id. – ECF No. 53-4 at 4–5 (Bates NMIC_001478–79).

[15] Lathrum Decl. – ECF No. 53-2 at 6–7 (¶¶ 44–47); Claim Notes, Ex. B to id. – ECF No. 53-3 at 99 (Bates NMIC_003258); Email, Ex. CC to id. – ECF No. 53-4 at 7 (NMIC_001624).

[16] Email, Ex. DD to Lathrum Decl. – ECF No. 53-4 at 42 (Bates NMIC_000372).

[17] Email, Ex. EE to Lathrum Decl. – ECF No. 53-4 at 45 (Bates NMIC_001473).

[18] Email, Ex. FF to Lathrum Decl. – ECF No. 53-4 at 47 (Bates NMIC_001472).

[19] Letter, Ex. GG to Lathrum Decl. – ECF No. 53-4 at 50 (Bates NMIC_000353).

[20] Email, Ex. HH to Lathrum Decl. – ECF No. 53-4 at 53 (Bates NMIC_001616).

[21] Letter, Ex. 15 to Austin Dep., Ex. D to Chipman Decl. – ECF No. 53-1 at 287.

They spent $39,325 in appraisal costs.[22] In February 2023, Mr. Koester sent a revised estimate for repairs to Mr. Miller of $250,128.66, but it was not provided to Nationwide.[23] On February 23, 2023, the appraisal panel awarded $165,000 for replacement costs ($158,818.83 in actual cash value and $6,181.17 in recoverable depreciation).[24] On March 13, 2023, Nationwide paid the plaintiffs the balance of $89,579.84.[25] Its monthly letters to Mr. Miller and Mr. Bansal about the status of repairs were not answered.[26] The plaintiffs began repairs on the property on August 18, 2023, and completed repairs on February 2, 2024.[27]

On August 15, 2023, Mr. Miller sent an email claiming packing-and-moving costs of $31,055.06 and stating that the plaintiffs would be renting temporary quarters.[28] The plaintiffs submitted Airbnb receipts for $21,504.[29]

### 3. Procedural History

All parties have consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[30] The court held a hearing on August 7, 2025.

**SUMMARY-JUDGMENT STANDARD**

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material

---

[22] Bansal Decl. – ECF No. 56-2 at 2 (¶ 2).

[23] Lathrum Decl. – ECF No. 53-2 at 11 (¶ 95).

[24] Appraisal Award, Ex. AAA to Lathrum Decl. – ECF No. 53-5 at 2–3 (Bates NMIC_000401–02).

[25] Email, Ex. CCC to Lathrum Decl. – ECF No. 53-5 at 59 (Bates NMIC_000380).

[26] Emails, Exs. DDD–HHH to Lathrum Decl. – ECF No. 53-5 at 62–80 (Bates NMIC_001591–605).

[27] Email, Ex. UUU to Lathrum Decl. – ECF No. 53-5 at 170 (Bates NMIC_001950).

[28] Email, Ex. III to Lathrum Decl. – ECF No. 53-5 at 83 (Bates BANSAL0553).

[29] Email, Ex. OOO to Lathrum Decl. – ECF No. 53-5 at 125–31 (Bates NMIC_001694–95, NMIC_001841–45).

[30] Consents – ECF Nos. 7, 9.

facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

Nationwide argues that the plaintiffs cannot prove breach of contract, bad faith, or punitive damages.[31] Summary judgment is granted on all grounds.

---

[31] Mot. – ECF No. 53 at 19–33.

### 1. Breach of Contract

The elements of a breach-of-contract claim are (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003).

Nationwide paid the repair costs. California law bars recovery of policy benefits in excess of an appraisal award. *Klubnikin v. Cal. Fair Plan Ass'n*, 84 Cal. App. 3d 393, 399 (1978). The plaintiffs do not contest that this principle bars any claim for additional repair damages.[32] The disputed costs are moving costs, temporary housing costs, food costs, appraisal costs, and fair rental value.[33] The plaintiffs also contend that Nationwide's claims-handling process breached the contract.[34]

**Moving Costs.** Moving (or pack-out) costs of $31,055.06 are barred by the appraisal award. The plaintiffs demanded that the panel appraise the entire loss to the dwelling under Coverage A.[35] The appraisal process determines the "actual cash value," replacement cost, or cost to repair the property, which includes costs necessary to facilitate repairs, such as moving costs.[36] Mr. Miller's August 15, 2023, letter characterized these costs as necessary to facilitate the repairs, aligning them with Coverage A.[37] The appraisal award, accepted by the plaintiffs in February 2023, resolved the total loss under Coverage A, and the only exclusion was for compliance with "building code, ordinance, or law."[38] The plaintiffs' acceptance of the award estops them from seeking additional repair-related costs, including moving costs, as they did not petition to vacate the award within one hundred days of service, as required by Cal. Civ. Proc. Code § 1288.[39] *Trollope v. Jeffries*, 55 Cal.

---

[32] Opp'n – ECF No. 56 at 11–19.

[33] *Id.* at 10–16.

[34] *Id.* at 19–20.

[35] Email, Ex. NN to Lathrum Decl. – ECF No. 53-4 at 78.

[36] *See supra* Statement (excerpting the policy provision regarding appraisal).

[37] Letter, Ex. III to Lathrum Decl. – ECF No. 53-5 at 83.

[38] Appraisal Award, Ex. AAA to Lathrum Decl. – ECF No. 53-5 at 2–3.

[39] Reply – ECF No. 59 at 7.

App. 3d 816, 826 (1976). The plaintiffs cite no authority supporting recovery of moving costs outside the appraisal award.

**Temporary Housing Costs.** The temporary housing costs, reflected in 2023 Airbnb receipts for $21,504, were incurred after the policy's two-year coverage period expired on July 17, 2023 (24 months from the date of loss). The policy limits coverage to "the shortest time required to repair or replace the damage" or twenty-four months, whichever occurs first. The plaintiffs argue that they could not start repairs until August 2023 and that Nationwide must show both their breach and substantial prejudice to deny coverage.[40] Even assuming that is the correct legal standard, which Nationwide disputes,[41] the plaintiffs submitted the Airbnb receipts after filing suit in 2023 and did not provide prior notice to Nationwide, despite the policy's requirement to document such expenses. The plaintiffs were living in Mrs. Bansal's second home in Oxnard and rented the Airbnb to be closer to the repairs, but lack of timely notice precludes coverage. *See Belz v. Clarendon Am. Ins. Co.*, 158 Cal. App. 4th 615, 626 (2007) (timely notice is a condition precedent to coverage).

**Food Costs.** The claimed food costs of $4,163.10, submitted on December 8 and December 24, 2021, were for expenses incurred due to an unusable kitchen. The policy covers only the "necessary increase in living expenses" to maintain the household's normal standard of living. Nationwide requested documentation of normal food costs to determine the reasonable increase, but the plaintiffs provided only total expenses without a baseline. Additionally, some claimed costs were incurred at the Oxnard property, unrelated to the covered loss. The plaintiffs did not provide sufficient evidence to establish a covered loss under Coverage D.

**Appraisal Costs.** The plaintiffs' appraisal costs of $39,325 are not recoverable under the policy, which does not provide for reimbursement of appraisal expenses. The plaintiffs did not respond to Nationwide's argument on this point, conceding it. *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWx), 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017)

---

[40] Opp'n – ECF No. 56 at 13 (citing *Silicon Storage Tech., Inc. v. Nat'l Fire Ins. Co. of Pittsburgh*, No. 13-CV-05658-LHK, 2015 WL 7293767, at *4 (N.D. Cal. Nov. 19, 2015)).

[41] Reply – ECF No. 59 at 10–11.

(failure to oppose an argument concedes it); *Narang v. Gerber Life Ins. Co.*, No. 18-CV-04500-LHK, 2018 WL 6728004, at *4 (N.D. Cal. Dec. 21, 2018) (same; collecting cases).

**Fair Rental Value.** The plaintiffs claim lost rents based on a February 2024 rental agreement, asserting they intended to rent the property after their November 2021 marriage.[42] The policy covers fair rental value only if the premises were "rented to others or held for rental" at the time of the loss (July 17, 2021). No evidence shows the property was rented or held for rental at that time, precluding coverage. *See Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 871 (1998) (policy terms strictly construed against coverage absent evidence).

**Claims-Handling Process.** The plaintiffs allege that Nationwide's initial assessment was incompetent, forcing them to hire a public adjuster, and that Nationwide's refusal to pay faster necessitated appraisal.[43] An insurer must thoroughly and fairly investigate, process, and evaluate claims. *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007). Reasonableness is typically a question of fact, but undisputed facts may support summary judgment. *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002). Here, Nationwide responded promptly to the July 19, 2021, report, provided an initial estimate and payment by July 28, 2021, conducted a reinspection on October 26, 2021, revised its estimate to $69,261.61 in January 2022, paid $52,012.31, and, after appraisal, paid the awarded balance of $89,579.84 in March 2023. This timeline shows a reasonable investigation and claims-handling process, with no evidence of unreasonable delay or failure to investigate. *See Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001) (prompt investigation and payment preclude bad-faith claims).

### 2. Bad Faith and Punitive Damages

Without a breach of the insurance contract, there is no breach of the implied covenant of good faith and fair dealing. *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 36 (1995). Even if a breach

---

[42] Bansal Decl. – ECF No. 56-2 at 2 (¶¶ 3–4); Agreement, Ex. A to *id.* – ECF No. 56-2 at 13–19.

[43] Opp'n – ECF No. 56 at 19 (claiming violations of the Fair Claims Settlement Practices Regulations, Cal. Civ. Code § 2695.7(d), and the implied covenant of good faith and fair dealing).

occurred, bad faith requires unreasonable conduct, such as an intentional or reckless denial of benefits. *Chateau Chamberay*, 90 Cal. App. 4th at 347. The undisputed timeline shows Nationwide's prompt investigation, payments, and compliance with the appraisal process, negating bad faith. Absent bad faith, punitive damages are unavailable. *Franceschi v. Am. Motorists Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir. 1988). Moreover, punitive damages require clear and convincing evidence of fraud, malice, or oppression, ratified by a corporate officer, director, or managing agent. Cal. Civ. Code § 3294(a)–(b); *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288 (1994). The plaintiffs provide no evidence of such conduct or ratification.

## CONCLUSION

The court grants summary judgment to Nationwide on all claims. This resolves ECF No. 53.

**IT IS SO ORDERED.**

Dated: August 10, 2025

LAUREL BEELER
United States Magistrate Judge